USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #_____
DATE FILED: June 21, 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TONYÉ-D' MITIRA VICKERS-PEARSON,

Plaintiff,

- against -

CITY OF NEW YORK and NYC HEALTH +
HOSPITALS,

Defendants.

**OPINION AND ORDER**

18-CV-7430 (ER)

Ramos, D.J.:

*Pro se* Plaintiff Tonyé D'Mitira Vickers-Pearson brings this action against the City of

New York and NYC Health + Hospitals ("Defendants") under 42 U.S.C. § 1983, alleging while

detained by the New York City Department of Correction ("NYDOC"), Defendants violated his

constitutional rights.

Before this Court is Defendants' motion to dismiss the action for failure to state a claim.

For the reasons discussed below, Defendant's motion is GRANTED.

## I.    BACKGROUND[1]

On June 15, 2017, Vickers-Pearson while in the custody of the NYDOC was processed in

the Vernon C. Bain Center ("VCBC"). Pl.'s Compl. 4. While undergoing processing, Vickers-

Pearson alleges that his blood was drawn by someone in the medical facility to test for conditions

including tuberculosis. *Id.* Vickers-Pearson tested positive for tuberculosis, however he asserts

---

[1] The Court accepts as true for purposes of this motion the allegations contained in the Complaint, as well as facts in
Plaintiff's papers that are consistent with the allegations contained in his Complaint. *See Walker v. Schult*, 717 F.3d
119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by
a *pro se* party in his papers opposing the motion."); *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y.
2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda are consistent with the allegations
contained in the Complaint, they may be read as supplements to the pleadings.").

that the Health + Hospitals employees never informed him of his positive diagnosis.[2] *Id.*

Vickers-Pearson already suffered from human immunodeficiency virus (HIV) during this time

and alleges that the staff at the medical facility was aware of his preexisting condition.[3] *Id.*

On June 17, 2017, Dr. Muhammad Zaman, a Health + Hospitals employee, noted that a

clinical appointment was scheduled for Vickers-Pearson for some time in the future.[4] Pl.'s. Ex.

B. Vickers-Pearson claims he was never brought to the scheduled appointment.[5] Pl.'s Mem.

Opp. Defs.' Mot. Dismiss 4.

From June 15, 2017 through December 13, 2017, nearly six months, Vickers-Pearson

remained in the custody of the NYDOC transferring from the VCBC to the Otis Bantum

Correctional Center ("OBCC") and to the Brooklyn Detention Complex ("BKDC").[6] *Id.*

Throughout that time, Vickers-Pearson alleges that the medical staff's failure to inform him

about the positive test or treat his tuberculosis exacerbated his symptoms. *Id.* Vickers-Pearson

alleges his T-cell count decreased while his HIV viral load increased to unhealthy levels.[7] In

addition, he alleges while in the custody of NYDOC, he suffered breathing issues, continuous

coughing, sweating and fatigue as a result of his untreated tuberculosis. *Id.* When encountering

these symptoms, Vickers-Pearson repeatedly visited the Health + Hospitals medical clinics. *Id.*

---

[2] Vickers-Pearson does not make it clear whether the results came in the same day he was seen or if they came in at a different point in time.

[3] Vickers-Pearson does not say what the basis was for his belief that the medical staff was aware of his condition.

[4] It appears Vickers-Pearson made a clerical error in his complaint by writing the year 2019 instead of the year 2017. The Court infers that Vickers-Pearson is referring to Exhibit B which provides the correct date including the year 2017.

[5] It is not clear from the note when the appointment was scheduled.

[6] Vickers-Pearson does not allege whether he was detained in Otis Bantum Correctional Center before or after being detained in the Brooklyn Detention Complex. He also does not say how long he was detained in each facility.

[7] Vickers-Pearson does not say how he was informed of his deteriorating health conditions because he alleges NYDOC medical facility employees did not treat him for any of his symptoms.

Vickers-Pearson alleges Defendants were in possession of his medical records and should have treated his tuberculosis and to prevent it from getting worse.[8] He asserts that he did not find out about the positive test results until he was sentenced to a term of imprisonment and transferred to the custody of the New York State Department of Correction and Community Supervision ("DOCCS"), and alleges if he had known of the diagnosis, he would have requested treatment. *Id.*

## II. PROCEDURAL HISTORY

Vickers-Pearson is currently incarcerated at Auburn Correctional facility, and while detained, brought the present action against the City of New York ("the City") and the New York City Department of Correction ("NYDOC") under 42 U.S.C. 1983 on August 16, 2018, requesting relief in the amount of $350,000.

On September 7, 2018, the Court dismissed the action against the NYDOC, and directed the Clerk of the Court to add Health + Hospitals as a defendant.[9] On October 10, 2018, Health & Hospitals was served with the summons and complaint. On October 22, 2018, the City executed their waiver of service and their answer was due December 21, 2018. On November 20, 2018 Health + Hospitals requested an extension of time to file answer, which the Court granted on November 26, 2018 for December 21, 2018. One day before the answer was due, the Defendants filed a motion to dismiss Vickers-Pearson's complaint pursuant to Federal Rules of Civil Procedure 12(f) for failure to comply with Rule 8(a)(2), and pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted.

---

[8] Vickers-Pearson does not say when his tuberculosis got worse. It is not clear if he had symptoms at the moment he was tested or suffered from them shortly after.

[9] Section 1983 claims can be brought against NYC Health + Hospitals Corp. because it "is a municipal corporation that operates New York City municipal hospitals. *Rookard v. Health and Hospitals Corp.*, 710 F, 2d 41, 43 (2d Cir. 1983).

## III.    LEGAL STANDARDS

### a.    12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

### b.    *Pro Se* Plaintiff

Courts must construe a *pro se* complaint liberally, and interpret its claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). When a plaintiff's claims involve civil rights violations, the Court applies this standard "with particular force." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level." *Id.* (citing

*Twombly*, 550 U.S. at 555). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se*

plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-

harmed me accusation." *Iqbal*, 556 U.S. at 678.

      **c.** Extrinsic Materials Beyond Complaint

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may

consider documents that are referenced in the complaint, documents that the plaintiffs relied on

in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when

bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d

348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.

2002)). Furthermore, reliance must "render[] the document 'integral' to the complaint." For a

court to regard a document as "integral," "it must be clear on the record that no dispute exists

regarding the authenticity or accuracy of the document" and "[i]t must also be clear that there

exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v.*

*Beer*, 463 F.3d 130, 134 (2d Cir. 2006). *See also Davis v. McCready*, 283 F. Supp. 3d 108, 118

(S.D.N.Y. 29, 2017) ("a court may only consider material extrinsic to the complaint in evaluating

a motion to dismiss when the extrinsic material is "either in [the] plaintiff['s] possession" or is

material "of which [the] plaintiff[ ] had knowledge and relied on in bringing suit").

Here, Vickers-Pearson attaches part of his medical records, specifically his tuberculosis

lab test results from June 15, 2017, in his response to Defendants' motion to dismiss. Pl.'s Ex.

B. Vickers-Pearson alleges Dr. Zaman reviewed his medical file on June 17, 2017 and noted that

an appointment at some future date was scheduled for Vickers-Pearson. Pl.'s Mem. Opp. Defs.'

Mot. Dismiss 6. Accordingly, based on Dr. Zaman's knowledge of the positive test results,

Vickers-Pearson alleges Health + Hospitals should have treated him for the illness. *Id.*

Additionally, Vickers-Pearson refers to his medical summary at least four times in his complaint and in his opposition to the Defendants' motion to dismiss. *See id.; see also Sankara v. City of New York*, No. 15 Civ. 6928 (VSB), 2018 WL 14033236, *at 7 (S.D.N.Y. Feb. 22, 2018) (finding that the "plaintiff refers to and relies upon his medical records from Correctional Health Services, but does not attach the records to his complaint . . . the defendants attach certain of these records as an exhibit to their reply in support of their motion to dismiss; therefore, these records are properly before [the court]"); *see also Global Network Communications, Inc. v. City of New York*, 458 F. 3d 150, 157 (2d Cir. 2006) ("document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint"). Thus, the Court may properly rely on the medical records provided by Defendants.

The records provided by Defendants directly contradict the allegation by Vickers-Pearson that Defendants knew that he tested positive for tuberculosis and did nothing. The records reveal that he was seen in the VCBC clinic on June 17, 2017 by Dr. Zaman, two days after he was tested, and was told that he had tested positive for tuberculosis. Defs.' Ex. A. Vickers-Pearson's lungs were examined and displayed no symptoms associated with tuberculosis. *Id.* Dr. Zaman also ordered a follow up appointment which occurred the following day, June 18, 2017. *Id.* During his follow up appointment, Vickers-Pearson was seen by Physician's Assistant D Oyen Keene. Keene noted Vickers-Pearson was HIV positive and had tested positive for tuberculosis. Defs.' Ex. B. When asked if he was suffering from any symptoms, Vickers-Pearson denied any coughing or fever, only identifying he was experiencing some weight loss. *Id.* at 2. Keene noted that Vickers-Pearson "was educated on PTB, its pathophysiology, course, treatment, medication

6

benefits/side effects, and [Vickers-Pearson] verbalized understanding and consented to treatment." *Id.* Keene noted "given [Vickers-Pearson's] h[istory of] HIV[,] would recommend INH prophylaxis for 9 mo[nths] pending c[hest] x-ray results. *Id.* at 3. Keene scheduled Vickers-Pearson for a follow up appointment to review chest x-ray results and to offer Insoniazid (INH).[10] *Id.* On June 27, 2017 a chest x-ray was performed on Vickers-Pearson and revealed "no evidence of active or chronic tuberculosis." Defs.' Ex. C. On July 10, 2017 Vickers Pearson was seen by Dr. Lesly Jean Gilles. Defs.' Ex. D. Dr. Gilles noted that Vickers-Pearson "denied any fever, weight loss and adenopathy or night sweat" and that he was "clinically stable." *Id.* Dr. Gilles also noted that Vickers-Pearson "refused INH therapy and sign[ed] a refusal aware of risk and consequences." *Id.* at 2. Vickers-Pearson signed a "Patient Refusal of Treatment" for INH therapy on that same day, agreeing that he "understood [his] refusal [was] against the advice of [his] health care practitioner." Defs.' Ex. E.

## IV. DISCUSSION

### a. Eighth Amendment Claims for Denial of Medical Care

The Eighth Amendment requires that prison officials take "reasonable measure[s] to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 620 (2d Cir. 1996); *see also Gilmore v. Rivera,* No. 13 Civ. 6955 (RWS), 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Prison officials may neither deprive a prisoner of basic human needs, *e.g.,* food, clothing, shelter, medical care, and reasonable safety, nor expose an inmate to conditions that pose an unreasonable risk of serious damage to his future health.") (citations omitted). To prevail under the Eight Amendment, an inmate must show "(1) that the

---

[10] INH is used to treat tuberculosis infections, working to stop the growth of bacteria. Defs.' Reply Mem. Supp. Mot. Dismiss 3.

deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" *Trammel v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."); *Fair v. Weiburg*, No. 02 Civ. 9218 (KMK), 2006 WL 2801999, at *5 (S.D.N.Y. Sept. 28, 2006) ("[U]nder the Eighth or Fourteenth Amendments, a prisoner must show that the prison official or state actor, acting with deliberate indifference to the prisoner's safety, subjected the prisoner to a sufficiently serious deprivation."); *Pizarro v. NYC Health + Hospital*, No. 16 Civ. 5720 (KBF), 2018 WL 2059654, at *4 (S.D.N.Y. May 1, 2018) ("defendant need only provide reasonable care in the face of a sufficiently serious medical condition, not the type of care that plaintiff would prefer").

To satisfy the objective component, a plaintiff must allege a "sufficiently serious" deprivation such that the deprivation "denied the minimal civilized measure of life's necessities." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Generally, the "[n]ormal conditions of ... confinement do not constitute an Eighth Amendment violation" and "[s]uch confinement is not abnormal unless it is 'without penological justification, grossly disproportionate, or involving the unnecessary and wanton infliction of pain.'" *Branch v. Goord*, No. 05 Civ. 6495 (WHP), 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006) (quoting *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984)). "Although the seriousness of the harms suffered is relevant to calculating damages and may shed light on the severity of an exposure, serious injury is unequivocally not a necessary element of an Eighth Amendment claim." *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)).

To establish the subjective element of an Eighth Amendment claim, a plaintiff must allege facts showing that a defendant either knew of and disregarded an "excessive risk of inmate health and safety" or that he was aware of facts from which it could reasonably be inferred that a substantial risk of serious harm existed. *Caiozzo v. Koreman*, 581 F.3d 63, 71 (2d Cir. 2009); *see also Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Accordingly, "[a] prison official acts with deliberate indifference and thus 'has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measure to abate the harm.'" *Lee v. Artuz*, No. 96 Civ. 8604 (JGK), 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting *Hayes*, 84 F.3d at 620). "Moreover, negligence, even if it constitutes medical malpractice, does not without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

Vickers-Pearson alleges that he was deprived of medical care because Health + Hospitals employees knew of his positive tuberculosis test results and failed to treat him for it. He alleges that he visited these facilities on multiple occasions and each time complained of symptoms consistent with tuberculosis including breathing issues, coughing, sweating, and fatigue. Because his tuberculosis remained untreated for six months, Vickers-Pearson alleges his health deteriorated, claiming his HIV viral load increased while his T cell count decreased to very unhealthy levels and could have been fatal. However, the medical records that are properly before the Court establish, contrary to what Vickers-Pearson alleges, that he was told about the

9

positive test results and was scheduled for numerous follow up visits with medical staff to address the results. *See Campbell v. New York City*, No. 12 Civ. 2179 (CBA) (VMS), 2014 WL 4199717, at \*4 (E.D.N.Y. May 7, 2014) (the court considered plaintiff's medical records in denying defendants' motion for reconsideration and concluded that the records contradicted the facts alleged in his complaint). In addition, he was offered a course of treatment that specifically addressed tuberculosis and he affirmatively declined. *See id.* Moreover, Vickers-Pearson's medical records indicate that he was not suffering from any of symptoms he alleges while detained in VCBC. Defs.' Ex. B. *See Williams v. Williams*, No. 13 Civ. 3154 (RA), 2015 WL 568842, at \*5 (S.D.N.Y. Feb. 11, 2015) (plaintiff's medical records d[id] not indicate that the delay in diagnosing and treating his broken finger exacerbated his medical condition, caused infection, or otherwise subjected him to an increased risk of harm).

Here, based upon the medical records, the Court finds that there is no basis for the allegation that he was denied medical care. *See Campbell*, 2014 WL 4199717, at \*4. Even further, Vickers-Pearson's medical records establish he was informed about the positive tuberculosis result and he refused treatment. Defs.' Ex. E. Accordingly, the complaint must be dismissed.

> **b.** Leave to Amend

District courts have broad discretion in deciding whether to grant leave to amend. *Pasternack v. Laboratory Corp. of Am.*, 892 F. Supp. 2d 540, 548–49 (S.D.N.Y. 2012). "When address[ing] a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F. 3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F. 2d 689, 705 (2d Cir. 1991)). The Second Circuit has reaffirmed that the "liberal

spirit" of the Federal Rules entails a "strong preference of resolving disputes on the merits."

*Loreley Financing (Jersey) No. 3 v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)). Courts deny leave to amend where the amendment would be futile or would result in undue prejudice to the opposing party. *Holmes v. Grubman*, 568 F. 3d 329, 334-35 (2d. Cir. 2009). In the instant action, Defendants ask the Court deny Vickers-Pearson any leave to amend his complaint because the medical records flatly belie the allegations that he was not told about the test results or offered care. Accordingly, an amendment would be futile.

The Court will not grant leave to amend the complaint. *See Riddick v. Semple*, 731 Fed. App'x. 11, 16 (2d Cir. 2018) (district court did not abuse its discretion in denying plaintiff leave to amend because claims "had substantive flaws that would not benefit from re-pleading"); *see also Ruffolo v. Oppenheimer & Co.*, No. 90 Civ. 4593 (SWK), 1992 WL 232084, at \*4 (S.D.N.Y. Sept. 1, 1992) ("no useful purpose would be served by granting the plaintiff the opportunity to serve an amended complaint"). Not only was Vickers-Pearson told about the test result, he signed a refusal to receive the recommended treatment for his tuberculosis. *See Peterec-Tolino v. New York*, 364 Fed. Appx. 708, 710 (2d Cir. Feb. 10, 2010) (plaintiff did not allege "sufficient facts that would establish that he suffered a wrong that could be remedied in federal district court"). The Court finds that Vickers-Pearson's allegations are unsupported by the facts presented and an amendment would be futile.[11]

---

[11] Because the Court finds that the complaint fails to state a claim, it will not analyze Defendants' alternative motion that the plaintiff file a more definite statement.

## V.  Conclusion

For the reasons set forth above, Defendants' motion to dismiss is granted.  The Clerk of

the Court is respectfully directed to terminate the motion, Doc. 20, and close the case.

It is SO ORDERED.


Dated:    June 21, 2019
          New York, New York

                                              Edgardo Ramos, U.S.D.J.